**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

John Reed,

Plaintiff,

v.

Home Depot, U.S.A., Inc.,
a Delaware corporation,

Defendant.

**MEMORANDUM OPINION AND ORDER**
Civil No. 01-1274 ADM/AJB

---

John Reed, *pro se*.

Bradley J. Betlach, Esq., Helleland, Lewis, Nilan, Sipkins & Johnson, P.A., Minneapolis, MN, appeared for and on behalf of Defendant.

---

## I. INTRODUCTION

On August 14, 2002, Defendant Home Depot, U.S.A., Inc. ("Home Depot"), argued its Motion for Summary Judgment [Doc. No. 18] before the undersigned United States District Judge. Plaintiff John Reed ("Plaintiff") did not appear at oral argument, but instead tardily submitted a *pro se* brief in support of his allegations of race and disability discrimination against Home Depot. Despite the untimely submission of Plaintiff's brief, which was not filed until the end of the day preceding the hearing, the Court has considered Plaintiff's arguments in ruling on the instant Motion. For the reasons set forth below, the Summary Judgment Motion is granted.

## II. BACKGROUND

Plaintiff is an African-American male who worked for Home Depot from April, 1997, until May, 2001, as a sales associate in the garden and hardware departments. Plaintiff received biannual performance reviews, and always received an overall performance rating of 3 (solid

AUG 16 2002
FILED
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

performance) on a scale of 1 (unacceptable performance) to 5 (exceptional performance).

Home Depot has a computer-based system in which associates register their interest in being promoted, called the Job Preference Program ("JPP"). All associates must be registered in the JPP in order to be considered for a promotion. Home Depot records indicate that Plaintiff used the JPP system on March 2, 1999, to express interest in the department supervisor position of the hardware department, and again in May, 2000, to express interest in the department supervisor positions for the building materials, hardware, and tool rental departments, and for the position of design coordinator. However, none of these positions became available between October 26, 1999,[1] and July 16, 2000, Plaintiff's last day of active employment. Duffy Aff. ¶ 3. During the relevant time period, the only sales associates promoted at the store where Plaintiff was employed were two men who each had more managerial and supervisory experience than Plaintiff and had received overall performance ratings of 4 (effective performance - meets or exceeds job expectations) in their performance reviews. Id. ¶¶ 2, 4-5.

Sales associates interested in promotion have the opportunity to sign up for department supervisor training. Plaintiff alleges he was denied this opportunity due to his race. Plaintiff allegedly attempted to sign up for this training twice, but was not at work the day the sign-up sheet was posted for one class, and the other class was cancelled. Reed Dep. 50, 54-55, 69-70, 102. Plaintiff admits he has no evidence that his failure to receive department supervisor training was related to his race, but rather relies on "intuition." Id. at 54-55, 70-71, 74-75, 163-64.

The documented physical requirements of the sales associate position at Home Depot, a

---

[1] Plaintiff's promotional claims must be based on promotions occurring after October 26, 1999, because he filed his EEOC charge on October 26, 2000.

working warehouse store, include continuous walking, standing for up to six hours without a break, bending, stooping, reaching, twisting, pushing, pulling, and moving and lifting items up to 95 pounds in weight. Betlach Aff. Ex. G. The documented essential functions of the job include stocking, walking around the department to assist customers, returning merchandise to its assigned location, climbing ladders to retrieve merchandise from storage, lifting and moving items weighing up to 95 pounds without assistance, manually unloading delivery trucks, and carrying merchandise throughout the store. Id.

In June, 1999, Plaintiff took a two-month medical leave of absence as a result of a back injury suffered in a non-work related slip and fall accident a year prior. Reed Dep. at 22, 56, 102, Ex. 12. Plaintiff was placed under doctor's restrictions to remain seated 66% of his workday, was not to engage in continual walking and standing, as well as various bending and lifting restrictions. Id. at 114, Ex. 15. Plaintiff was released by his doctor to light-duty work in August, 1999. Id. at 114. Home Depot did not have any light-duty positions available, but allowed Plaintiff to return to his sales associate position in the hardware department with instructions from the store manager Karen Duffy that he could take extra breaks as needed and that he should not exceed his doctor's work limitations. Reed Dep. 115-16; Duffy Aff. ¶ 8. While Plaintiff asserts that his medical restrictions continued unabated thereafter, neither he nor Home Depot has presented any evidence of restrictions subsequent to September, 1999. Reed Dep. 120-22, Exs. 15-18.

On July 17, 2000, Plaintiff had a discogram resulting in back pain for which his doctor provided a note to not work from July 20-24, 2000. Reed Dep. 144-45, Ex. 20. However, Plaintiff was already on a scheduled two-week vacation at that time. Id. at 147-48. Plaintiff then

had surgery on his back. Plaintiff alleges he talked to an associate at Home Depot on the phone to tell them he would not be coming back to work for several months because of the surgery, but he does not remember to whom he spoke or what he was told. Id. at 148-51. Plaintiff also alleges he talked to various other sales associates subsequently regarding his status, but admits he never spoke with the store manager. Id. 155-57. Plaintiff never returned to work after his surgery in summer 2000, and was terminated for job abandonment in May, 2001 when Plaintiff's supervisors had not heard from him for many months.

## III. DISCUSSION

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall issue "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). On a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party. Ludwig v. Anderson, 54 F.3d 465, 470 (8th Cir. 1995). The nonmoving party may not "rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial." Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995). Further, "the mere existence of some alleged factual dispute between the parties is not sufficient by itself to deny summary judgment . . . . Instead, 'the dispute must be outcome determinative under prevailing law.'" Get Away Club, Inc. v. Coleman, 969 F.2d 664, 666 (8th Cir. 1992) (citation omitted).

Plaintiff presents no direct evidence of discrimination. Where a plaintiff relies on circumstantial, as opposed to direct, evidence of intentional discrimination, the Court applies the three-stage burden shifting approach developed by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), and later refined by the Court in Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248 (1981). See St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506-07 (1993); Dammen v. UniMed Med. Ctr., 236 F.3d 978, 980 (8th Cir. 2001). Under this framework, the plaintiff bears the initial burden of presenting a prima facie case of discrimination. Dammen, 236 F.3d at 980. If the prima facie case is established, a legal presumption arises that the employer unlawfully discriminated against the plaintiff. Id. This rebuttable presumption shifts the burden[2] to the employer to produce evidence that the plaintiff was rejected (or someone else was preferred) for a "legitimate, nondiscriminatory reason." Id. If the employer articulates such a reason, the presumption disappears and the McDonnell Douglas framework becomes irrelevant. The sole remaining issue is whether the employer discriminated. Id. The plaintiff then has an opportunity to prove, by preponderance of the evidence, that "the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." Id. Proof that a defendant's proffered reason is unpersuasive or contrived does not establish plaintiff's proffered reason of discrimination is correct, however. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 146-47 (2000). That is, it is not enough to *disbelieve* the employer, but rather the plaintiff's explanation of intentional discrimination must be *believed*. Id. at 147.

---

[2] This framework only shifts the burden of production; the burden of persuasion rests at all times with the plaintiff. Id.

**A. Race Discrimination**

To establish a prima facie case of racial discrimination, a plaintiff must show: (1) he is a member of a protected class; (2) he is qualified for the position; (3) he suffered an adverse employment action; and (4) some evidence that would allow the inference of improper motivation. Barge v. Anheuser-Busch, Inc., 87 F.3d 256, 259-260 (8th Cir. 1996).

Plaintiff fails to meet his burden of establishing a prima facie case of race discrimination. There is no evidence of record that Plaintiff applied for a promotion and was denied. It is undisputed that in order to receive a promotion at Home Depot an associate must register in the JPP. Regarding each of the two times Plaintiff registered in the JPP, it is undisputed that none of the positions Plaintiff expressed interest in became available during the relevant time frame. Duffy Aff. ¶ 3. Even if Plaintiff could establish this element of the prima facie case, Plaintiff also fails to establish that his qualifications were similar to those who received promotions in other departments. The only two associates promoted during the relevant time frame, each promoted to positions for which Plaintiff did not register in the JPP, both had more management experience than Plaintiff and had received higher ratings in work performance evaluations than Plaintiff. See Schultz v. McDonnell Douglass Corp., 105 F.3d 1258, 1259-60 (8th Cir. 1997) (holding that promotional ratings are relevant to determining whether promotional candidates are equally qualified). Plaintiff also alleges his failure to receive training was based on race discrimination. However, there is no evidence that Home Depot prohibited Plaintiff from taking department supervisor training, therefore this does not constitute an adverse employment action. See Betlach Aff. Ex. B, No. 5; Reed Dep. 54-55, 69-71, 74-75, 102, 163-64; see also Dollis v.

Rubin, 77 F.3d 777, (5th Cir. 1995) (holding that denial of opportunity to attend training conference is not an adverse employment action). Summary judgment on Plaintiff's race discrimination claim is granted.

**B. Disability Discrimination**

Disability discrimination analysis employs the same burden-shifting examination. The ADA protects qualified persons with disabilities from discriminatory treatment, and requires employers to offer reasonable accommodation to disabled persons. 42 U.S.C. §§ 12102, 12111. To obtain relief under the ADA, an aggrieved employee must establish that he has a disability, that he is qualified to perform the essential functions of the job, with or without reasonable accommodation; and that he has suffered adverse employment action because of his disability. Benson v. Northwest Airlines, 62 F.3d 1108, 1112 (8th Cir. 1995). The ADA defines a qualified person with a disability as an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of his or her job. 42 U.S.C. § 12111(8). The determination of qualification must be based on the individual's capabilities at the time of the employment decision. Duda v. Board of Educ. of Franklin Park Pub. Sch. Dist. No. 84, 133 F.3d 1054, 1059 (7th Cir. 1998) (citing 29 C.F.R. § 1630.2(m) (1997)). Home Depot had no obligation to create a light duty position for Plaintiff. See Hoskins v. Oakland County Sheriff's Dept., 227 F.3d 719, 729 (6th Cir. 2000) (holding that an employer is not obligated to create a position not then in existence).

Plaintiff also fails to establish a prima facie case of disability discrimination. First, Plaintiff does not qualify as having a "physical or mental impairment that substantially limits one or more of [his] major life activities," as required by the ADA to be considered "disabled." 42

U.S.C. 12102(2). To satisfy the "demanding standard" for qualifying as disabled, a Plaintiff must produce evidence of "an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives [where the] impairment's impact [is] permanent or long term." Toyota Motor Mfg., Kentucky, Inc. v. Williams, 534 U.S. 184, 122 S.Ct. 681, 691 (2002). Plaintiff has failed to do so. In fact, surveillance videotape reveals that Plaintiff is capable of bending and lifting without difficulty. Def. Ex. D. Moreover, as above, Plaintiff has failed to show that he suffered an adverse employment action. Plaintiff was allowed to remain in his position notwithstanding his medical restrictions until he left for an approved four-day medical leave from which he never returned. Plaintiff has not shown that his discharge 10 months later, after he never returned to work or notified the store manager of his status, was based on discrimination. Summary judgment on Plaintiff's disability discrimination claim is granted.

## IV. CONCLUSION

Based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that Home Depot's Motion for Summary Judgment [Doc. No. 18] is **GRANTED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

BY THE COURT:

ANN D. MONTGOMERY
UNITED STATES DISTRICT JUDGE

Date: August 16, 2002

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

## CIVIL NOTICE

**DATE MAILED TO COUNSEL/PRO SE PARTIES:**

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

> ***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.